UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| VAN JUILLERAT, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 1:15-CV-98-TLS |
| TOWN COUNCIL OF ANDREWS, INDIANA, *et al.*, | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter comes before the Court on a Motion for Summary Judgment [ECF No. 56] filed by Defendants, the Town Council of Andrews, Indiana, John Harshbarger in his official capacity as a Town Council Member and his individual capacity, and Raymond Tackett in his official capacity as a Town Council Member and in his individual capacity. Plaintiff Van Juillerat filed his Complaint against the Defendants on March 24, 2015 [ECF No. 2] in state court, alleging violation of Indiana Code § 36-8-3-4, defamation, denial of due process and equal protection, violation of 42 U.S.C. § 1983, violation of the Fair Labor Standards Act ("FLSA"), and civil conspiracy. The Defendants removed this case to federal court [ECF No. 1] on April 27, 2015. On April 27, 2016, the Court granted in part [ECF No. 28] the Defendants' Motion to Dismiss [ECF No. 11], finding that the Plaintiff had failed to state a claim on which relief could be granted as to Count I, alleging violation of Indiana Code § 36-8-3-4, and Count VI, alleging civil conspiracy, based on the relevant statutes of limitation.

On December 14, 2017, the Defendants filed a Motion for Summary Judgment [ECF No. 56] on the remainder of the Plaintiff's claims, Counts II–V. The Plaintiff responded [ECF No.

69] on June 1, 2018, and the Defendants replied [ECF No. 70] on June 15, 2018. The Defendants also filed a Motion for Sanctions [ECF No. 60] on February 8, 2018, regarding conduct by the Plaintiff's counsel that also forms the basis of one of the Defendants' summary judgment arguments. There has been no timely response to the Motion for Sanctions.

**FACTUAL BACKGROUND**

The Plaintiff served as a deputy marshal for the Town of Andrews in 1988. Within a year, he was promoted to Town Marshal. From 2008 to 2009, the Plaintiff asserts that he incurred extra work as an "operation manager," for which he was not paid. In 2010, the Plaintiff received a raise and asserts that he was told that "it wasn't enough, but would help" to compensate him for the extra duties. The Plaintiff was relieved of these duties in 2012. In 2012, the Town Council awarded him "longevity pay," which consisted of a fixed percentage increase based upon the Plaintiff's salary for the year preceding the longevity pay period. The Plaintiff was the only employee to receive longevity pay as opposed to the annual pay raises that other town employees received. Effective January 1, 2013, the Council ceased the Plaintiff's longevity pay, reduced his salary by the amount he was receiving as longevity pay, and awarded him a 1% pay raise. This raise did not make up for the monetary loss of the longevity pay.

On March 11, 2013, the Town Council of Andrews, Indiana consisted of three members: John Harshbarger, Raymond Tackett, and Mike Rohler. At a regular meeting on March 11, 2013, Harshbarger moved to demote the Plaintiff to his previous position as a deputy marshal. Tackett seconded the motion without discussion. Rohler objected to the motion and suggested that the Council conduct an "executive session" to review the alleged basis for the demotion. However, the Town's legal counsel did not believe such a session was proper because the action was not

2

disciplinary in nature. Rohler requested additional time before putting the issue to a vote, and the Council decided to set a tentative date and time for an executive session. Instead of holding an executive session as scheduled, the Council held a special meeting on March 19, 2013, for the purpose of discussing potential re-assignments within the police department. At that meeting, Defendants Harshbarger and Tackett again voted to demote the Plaintiff to deputy marshal. Rohler voted not to demote the Plaintiff because he believed that he had insufficient documentation to make an informed decision. The Plaintiff was demoted at that time, but continued to receive the same pay.

The Plaintiff asserts that, at the March 11, 2013, meeting, Harshbarger stated that the Plaintiff was "being insubordinate, that [he] was doing anything whenever [he] wanted, and that it was a detriment to the department, that it was interrupting the town's business . . . .' The Plaintiff also asserted that Harshbarger said that he "thought it was in the best interest of the town that [the Plaintiff] be demoted." Defendant Harshbarger made similar statements with regard to the Plaintiff at the March 19, 2013, meeting.

**STANDARD OF REVIEW**

Summary judgment is proper where the evidence of record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute that precludes summary judgment. *Id.* at 324. "[A] court has one task and one task only:

3

to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material issue, then the Court must enter summary judgment against it. *Id.*

## ANALYSIS

A.  **Statute of Limitations for Counts II and III**

The Court turns first to the Defendants' primary argument, which asserts that the Plaintiff failed to file this lawsuit within the applicable statutes of limitation. The dispute lies in whether the Plaintiff actually mailed his Complaint before or after the expiration of these periods. The statute of limitations for Count II expired on March 11, 2015 and, for Count III, expired on March 19, 2015.

Pursuant to Indiana Trial Rule 5, filing by registered or certified mail and by third-party commercial courier "shall be complete upon mailing or deposit." Ind. Tr. R. 5(f). The Plaintiff argues that two separate envelopes, both containing the Complaint, were mailed on March 10, 2015, one day prior to the statute of limitations for Count II and nine days prior to the statute of limitations for Count III. Each of the envelopes contained tracking numbers, and the Plaintiff's counsel printed the shipping label through his account on Endicia.com. However, records from Endicia submitted by the Defendants indicate that the shipping labels associated with the tracking numbers on the envelopes were not printed until March 24, 2015, and, therefore, the Defendants argue that the envelopes could not have been mailed on March 10, 2015. Records from the United States Postal Service (USPS) also indicate that these shipping labels were not created until March 24, 2015.

In response to the Defendants' argument, the Plaintiff's counsel submitted an affidavit, affirming that he mailed the Complaint on March 10, 2015. (*See* Pl. Resp. to Def. Mot. to Dismiss Exh. 1, ECF No. 15-1.) The Plaintiff's counsel also submitted copies of the envelopes in question, which bear what appear to be postmarks of March 10, 2015. However, the Defendant submitted an affidavit from USPS worker Lisa Moore [ECF No. 56-6], who stated that she reviewed the envelopes and that "[t]he March 10, 2015 date in the upper right hand corner was not created by the USPS." However, Ms. Moore offers nothing to explain how she knows the date was not created by USPS. Without any supporting information, this is simply a statement contradictory to the Plaintiff's counsel's statement that he mailed the Complaint on March 10, 2017, which is a credibility issue for the jury.

Thus, resolution of this statute of limitations defense is reserved for the trier of fact. On the one hand, the Plaintiff has produced envelopes bearing postmarks of March 10, 2015, and an affidavit by his counsel that the Complaint was properly mailed on March 10, 2015. On the other hand, the Defendants have submitted other business records and an affidavit that contradict this evidence. Neither party has offered a reason for the discrepancy in the evidence, and it is not the province of the Court to determine on summary judgment what date is more likely than not correct or whether the Plaintiff's counsel or Ms. Moore is more credible. Therefore, the Defendants' statute of limitations defense as to Counts II and III is unavailing at this stage of the litigation.

The Defendants' Motion for Sanctions accuses the Plaintiff's counsel of falsifying the affidavit regarding when the Complaint was mailed. Because the trier of fact must decide what date is correct, the Court cannot conclude that the Plaintiff's counsel falsified the affidavit. Therefore, the Court will deny the Defendants' Motion for Sanctions with leave to refile.

5

## B. Count II: Defamation

Under Indiana law, to prevail on a claim for defamation, a plaintiff must show a communication with defamatory imputation, malice, publication, and damages. *See Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind. 1994). If the action is one for defamation per se, damages are presumed. *See Kelley v. Tanoos*, 865 N.E.2d 593, 597 (Ind. 2007). "A communication is defamatory *per se* if it imputes: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation[;] or[] (4) sexual misconduct." *Levee v. Beeching*, 729 N.E.2d 215, 220 (Ind. Ct. App. 2000). "The term 'defamatory per se' shall be taken to designate words whose defamatory imputation is apparent on their face; that is, words which are defamatory in and of themselves." *Gibson v. Kincaid*, 221 N.E.2d 834, 843 (Ind. Ct. App. 1966). "[T]o recover in an action for defamation, that which causes the alleged defamation must be both false and defamatory." *Kolczynski v. Maxton Motors, Inc.*, 538 N.E.2d 275, 276 (Ind. Ct. App. 1989). "A statement is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Van Eaton v. Fink*, 697 N.E.2d 490, 494 (Ind. Ct. App. 1998) (citing *Furno v. Citizens Ins. Co. of AM.*, 590 N.E.2d 1137, 1141 (Ind. Ct. App. 1992)). However, "[t]he offensiveness of the statements cannot be determined by how the plaintiff views the statement[s]; the defamatory nature must be present in the nature of the words without any additional facts or circumstances to give context." *In re Ind. Newspapers Inc.*, 963 N.E.2d 534, 549–50 (Ind. Ct. App. 2012). "Generally, the determination of whether a communication is defamatory is a question of law for the court." *Ratcliff v. Barnes*, 750 N.E.2d 433, 436 (Ind. Ct. App. 2001) (citing *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind. Ct. App. 1999)).

On March 19, 2013, the Town Council conducted a special meeting, which was open to the public, "to discuss re-assignments within the police department and any other matters brought before the council." During this meeting, Defendant Harshbarger moved to demote the Plaintiff and replace the Plaintiff with Deputy Curt Vanover as Town Marshal. Defendant Harshbarger stated that he "believed that these changes [were] necessary so that the Council [could] focus on the more positive aspects of Town business." The Plaintiff asserts that at both the March 11, 2013, and March 19, 2013, public meetings, Defendant Harshbarger alleged that the Plaintiff had committed various acts of insubordination without providing any documentation to support such allegations. Specifically, the Plaintiff alleges that at the March 11, 2013, meeting, Defendant Harshbarger made statements to the effect of that the Plaintiff "was being insubordinate, that [he] was doing anything whenever [he] wanted, and that it was a detriment to the department, that it was interrupting the town's business, that they couldn't conduct any other business until they took care of this situation [and] [t]hat [Defendant Harshbarger] thought it was in the best interest of the town that [the Plaintiff] be demoted." (*See* Juillerat Dep. 38:20–39:2, ECF No. 56-1.)

The Plaintiff alleges that Defendant Harshbarger's statements, at least when all inferences are drawn in the Plaintiff's favor, are defamatory on their face because they implicate misconduct in his trade, profession, office, or occupation. Defendant argues (1) that the alleged statements were privileged, (2) that the alleged statements were not so obviously injurious so as to be defamatory on their face, and (3) the Plaintiff cannot prove actual malice, which is an essential element of his claim.

*1.     Qualified Privilege*

The Court first looks to Defendant Harshbarger's argument that even if the statements were defamatory, they are protected by the common interest privilege. A qualified "common interest" privilege "applies to communications made in good faith on any subject in which the party making the communication has an interest, or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Gatto v. St. Richard Sch., Inc.*, 774 N.E.2d 914, 924–25 (citing *Schrader*, 639 N.E.2d at 262). "The privilege arises out of the necessity for full and unrestricted communication on matters in which the parties have a common interest or duty." *Id.* at 925. "The existence of a qualified privilege does not change the actionable nature of the words spoken." *Cortez v. Jo-Ann Stores, Inc.*, 827 N.E.2d 1223, 1232 (Ind. Cit. App. 2005) (citing *Shallenberger v. Scoggins-Tomlinson, Inc.*, 439 N.E.2d 699, 707 (Ind. Ct. App. 1982)). "Rather the privilege 'rebuts the element of malice implied by law for the making of a defamatory statement.'" *Id.* (quoting *Shallenberger*, 439 N.E.2d at 707). "The defendant has the burden to produce evidence establishing the existence of the privilege." *Id.* (citation omitted). "The essential elements, then, of the defense of qualified privilege are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner to the appropriate parties only." *Schrader*, 639 N.E.2d at 262. Whether a qualified privilege protects a statement is a question of law to be determined by the Court. *Gatto*, 774 N.E.2d at 925 (citing *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992)).

"The protection afforded this privilege, however, may be lost upon a showing that it was abused." *Gatto*, 774 N.E.2d at 925 (citing *Schrader*, 639 N.E.2d at 262). "The privilege is abused when: (1) the communicator was primarily motivated by ill will in making the statement; (2)

there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth." *Id.* at 926. These inquiries are questions of fact. *Cortez*, 827 N.E.2d at 1234 (citing *Shallenberger*, 439 N.E.2d at 707). It is the plaintiff's burden to establish that the defendant has abused the privilege once the defendant has established that the privilege applies to the statement(s) at issue it. *Id.* Here, the Plaintiff has not responded directly to the Defendant's argument regarding whether the statements alleged to be defamatory are privileged, but the Plaintiff does argue regarding the allegedly malicious nature of Defendant Harshbarger's statements, which is relevant to whether Defendant Harshbarger abused any privilege his statements may otherwise have enjoyed.

Defendant Harshbarger argues that, as the Town Council President, he is responsible for appointing the Town Marshal and therefore has an interest in ensuring the Town Marshal was effective. Also, he argues, the citizens of the town and the members of the Town Council have an interest in how he, as the Town Council President, views the effectiveness of the Town Marshal. As a result, Defendant Harshbarger had the right to notify the town citizens and council members of his opinion as to how the Town Marshal was performing. Thus, he argues, there is a sufficient common interest to invoke the privilege. He also argues that his statements were made in good faith because they were made at Town Council meetings relating to potential leadership changes within the Town Marshal's office. He also asserts that the communications were appropriately limited in scope because they were made only at the Town Council meetings and were general, lacking specific allegations or details. Therefore, Defendant Harshbarger asserts that all of the elements for the common interest privilege are met.

In support of his argument, Defendant Harshbarger cites *Gatto v. St. Richard School, Inc.*, 774 N.E.2d 914 (Ind. Ct. App. 2002). In *Gatto*, the plaintiff was fired from the defendant's

9

employ as a teacher, and the school sent a letter to parents of the students enrolled at the school to inform them of five personnel changes that would be effective for the upcoming school year, including that the plaintiff would not be returning to teach. 774 N.E.2d at 919. The letter stated that the school had "decided that in the best interest of the Middle School program, Dr. Gatto should not return next year," but also noted that the details of the discussions leading to this decision would remain confidential. *Id*. The plaintiff brought suit, alleging, among other causes of action, defamation. *Id.* The court found that the statements that the plaintiff cited were not defamatory, but even assuming that they were, they were protected by the common interest privilege. *Id.* at 924. The court found that "[p]arents and schools have a 'corresponding interest' in the free flow of information about administrators and faculty members." *Id.* at 925. In fact, the interest that parents have "in the employment status of teachers and administrative personnel to whom they entrust their children . . . extends to whether the particular employee was fired, was refused a contract renewal, retired, or quit." *Id.* at 926.

While *Gatto* may be persuasive on the issue of common interest, Defendant Harshbarger still has the burden to prove the first element of the privilege: that the statements were communicated in good faith. Good faith means "a state of mind indicating honesty and lawfulness of purpose; belief in one's legal right; and belief that one's conduct is not unconscionable." *Owens v. Schoenberger*, 681 N.E.2d 760, 764j (Ind. Ct. App. 1997). Defendant Harshbarger argues only conclusorily that his statements were made in good faith. In contrast, there is evidence of record that tends to shed doubt on his claim: Councilman Rohler stated that he was unaware of the problems to which Defendant Harshbarger referred, that he requested more information, that he did not receive the requested information, that Defendant Harshbarger resisted Rohler's suggestion that they conduct an executory session on the matter, and that the

10

matter was seconded at both the March 11, 2013, and March 19, 2013, meetings without discussion. From these undisputed facts, a reasonable jury could determine that Defendant Harshbarger's statements were not made in good faith, were primarily motivated by ill will, or that Defendant Harshbarger did not have grounds for belief in the statements' truth. Therefore, the Court cannot determine as a matter of law that the statements are protected by the common interest privilege.

### 2. *Defamatory Imputation*

To prevail on a claim for defamation, a plaintiff must show a communication with defamatory imputation, malice, publication, and damages. *See Schrader*, 639 N.E.2d at 26. Although defamation is inherently premised on the publication of a false statement, and truth is an absolute defense, *see N. Ind. Pub. Serv. Co. v. Dabagia*, 721 N.E.2d 294, 301 (Ind. Ct. App. 1999), the parties have neither argued nor presented evidence of the truth or falsity of the statements at issue. For the purposes of summary judgment, the Court will assume that the statements were false. Because this is an action for defamation per se, damages are presumed. *See Kelley*, 865 N.E.2d at 597. There also does not appear to be any dispute that the statements were published within the meaning of the law. Therefore, only the defamatory imputation and malice elements are left for the Court's consideration.

In support of his argument, Defendant Harshbarger relies on *Levee v. Beeching*, 729 N.E.2d 215 (Ind. Ct. App. 2000), and *Baker v. Tremco Inc.*, 917 N.E.2d 650 (Ind. 2009). In *Levee*, the court found that a teachers' union's representative's remarks calling the school principal a "liar" and asserting that the principle "favored some staff" were not defamatory per se because the remarks did not impute professional misconduct to the principal. 729 N.E.2d at 220.

The court reasoned that the remarks carried defamatory meaning only in the context of ongoing personal attacks by the defendant against the plaintiff and were not "so obviously and naturally harmful that proof of their injurious character can be dispensed with." *Id.* In *Baker*, the court found that the comment that the plaintiff "had engaged in inappropriate sales practices" was "far too vague to conclude that they were so obviously and naturally harmful that proof of their injurious character can be dispensed with." 917 N.E.2d at 657–58. The court noted that the use of the word "inappropriate" did not impute professional "misconduct." *Id.* at 658.

Defendant Harshabarger's statements included that the Plaintiff was being "insubordinate." While the word "insubordinate" does not describe any specific acts, it is closer to "misconduct" than is "inappropriate" because "insubordinate" implies the commission of certain acts that are in contravention of authority and in conflict with the Plaintiff's performance of his job. This is only exacerbated by the continuing statements by Defendant Harshbarger not only that the Plaintiff was "insubordinate," but also that his insubordinate actions were detrimental to the town and interrupting the town's business. A reasonable trier of fact could find that Defendant Harshbarger's statements were defamatory on their face, and the Court cannot make this determination as a matter of law. *See Journal-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 457 (Ind. 1999) ("If a statement is susceptible to both defamatory and non-defamatory meanings, the matter of interpretations should be left to the jury.").

3. ***Actual Malice***

It is not enough for the Plaintiff to prove that Defendant Harshbarger's statements were defamatory. He must also demonstrate that Defendant's Harshbarger's statements were made with actual malice. "Actual malice exists when the defendant publishes a defamatory statement

12

with knowledge that it was false or with reckless disregard of whether it was false or not." *Journal-Gazette*, 712 N.E.2d at 456. "To demonstrate reckless disregard, there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication or proof that the false publication was made with a high degree of awareness of their probable falsity." *Id.* (internal quotations omitted). This is a subjective, rather than an objective standard, and must be shown by clear and convincing evidence. *Id.* "Hence, a defendant's actual state of mind is a critical factor in the analysis." *Id.*

Defendant Harshbarger argues that he "sincerely believes the statements are true." (*See* Df. Br. in Supp. of Mot. for Sum. Judgment 17, ECF No. 57.) But, he offers no evidence in support that such is the case. As noted above, there appears to be no dispute that Councilman Rohler objected to the Plaintiff's removal based on a lack of information regarding the alleged acts of insubordination and never received the documentation or information he requested before the motion was put to a vote. From this, a reasonable trier of fact could conclude that Defendant Harshbarger knew his statements were untrue or at least acted in reckless disregard of the truth.

Therefore, the Court will not grant summary judgment as to the Plaintiff's defamation claim against Defendant Harshbarger.

### C.     Count III: Due Process as to Demotion

Count III alleges a violation of the Plaintiff's due process rights based on his demotion from Town Marshal to Deputy Marshal on March 19, 2013. The Plaintiff alleged in his Complaint that he has a constitutionally protected property right consisting of his public employment and that his demotion deprived him of that property right without due process of law. (*See* Compl. ¶¶ 52–54.) The Defendants argue that the Plaintiff confuses tenured

employment with his position as Town Marshal and, while not conceding that the Plaintiff was tenured, that there is no property right in a specific position, only in employment. Thus, because the Plaintiff was only demoted, not terminated, his due process rights were not violated. The Plaintiff has not responded to this argument in his responsive briefing, and the Court deems it waived. *See Hassebrock v. Bernhoft*, 815 F.3d 334, 342 (7th Cir. 2016); *Palmer v. Marion Cty.*, 327 F.3d 588, 597 (7th Cir. 2003) (finding that the plaintiff's negligence claim had been abandoned because he failed to argue it in his response brief on summary judgment); *Wilkes v. City of Fort Wayne*, No. 1:10-CV-169, 2011 WL 3806253, at *1 n.1 (N.D. Ind. Aug. 26, 2011) (finding that claim asserted in complaint but not argues in summary judgment response or sur-response brief were waived). Therefore, the Court will grant summary judgment as to Count III of the Plaintiff's Complaint.

**D.     Count IV: Due Process and Equal Protection as to Longevity Pay**

In Count IV of his Complaint, the Plaintiff asserts that his due process and equal protection rights were violated when he abruptly ceased receiving longevity pay without receiving the same raises that other employees had received over the years. The Plaintiff's longevity pay ceased on January 1, 2013, as part of a new salary ordinance. The Plaintiff does not dispute that this cause of action is subject to a two-year statute of limitations and offers no argument as to why this cause of action did not accrue on January 1, 2013. The Plaintiff's deadline to file this claim was therefore January 1, 2015, but he did not file it until, at the earliest, March 10, 2015. Thus, this claim is barred by the statute of limitations, and the Court will grant summary judgment as to Count IV.

### E. Count V: Violation of the FLSA

The Plaintiff alleged in his Complaint that the Defendants violated the FLSA by forcing him to "answer certain questions regarding the accusations of insubordination leveled against him" and to "perform additional duties which required that he work in excess of forty (40) hours per week." (Compl. ¶¶ 73–74.) The Defendant's only argument on summary judgment in support of dismissing this claim is that it is barred by the statute of limitations. According to the Plaintiff's interrogatories, the events giving rise to his FLSA claim ended in 2012. Therefore, the two-year statute of limitations expired in 2014, well before the filing of the instant action. The Plaintiff responds that where alleged violations of the FLSA are willful, the statute of limitations is three years, and, therefore, his Complaint was timely. Moreover, the Plaintiff argues that whether violation of the FLSA was willful is a question of fact—one that the Defendants did not argue—that defeats summary judgment. But, it is the Plaintiff who "[bears] the burden of showing that the defendants' conduct was willful for the purposes of the statute of limitations." *Bankston v. State of Ill.*, 60 F.3d 1249, 1253 (7th Cir. 1995); *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986) ("A two-year period is the norm, a three-year period the exception, and the burden is on the employee to show that the violation was 'willful.'"). The Plaintiff cannot rest his response on the bare assertion that whether the Defendants' actions were willful is a question of fact. The Plaintiff has not produced any evidence—nor indeed has the Plaintiff even alleged in his Complaint—that the Defendants' alleged violations were willful. *See Irwin v. State of Wis.*, No. 92-2509, 1993 WL 134051, at *15 (7th Cir. Apr. 28, 1993) (affirming a grant of summary judgment on FLSA statute of limitations issue because the plaintiffs did not produce evidence to establish willfulness). Therefore, the Court will grant summary judgment as to the Plaintiff's claim under the FLSA as barred by the statute of limitations.

## CONCLUSION

For these reasons, the Court GRANTS IN PART the Defendants' Motion for Summary Judgment [ECF No. 56] as to Counts III–V and DENIES IN PART as to Count II. The Court also DENIES with leave to refile the Defendants' Motion for Sanctions [ECF No. 60].

SO ORDERED on June 21, 2018.

s/ Theresa L. Springmann<br>
CHIEF JUDGE THERESA L. SPRINGMANN<br>
UNITED STATES DISTRICT COURT